IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BRYAN GONZALEZ,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | No.   **EP-11-CV-29 KC** |
| | § | |
| **VICTOR M. MANJARREZ, JR.,** | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING**
*ELGIN v. DEPARTMENT OF TREASURY*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………………………………………………………………ii

**STATEMENT OF THE ISSUES**……………………...……………………………….......…….iii

**PRECEDURAL HISTORY**……………………………………………………………...……...1

**ARGUMENT**……………………………………………………………………………………1

      **I.**       **THE SUPREME COURT IN *ELGIN* REAFFIRMED THE "HEIGHTENED SHOWING" REQUIRED TO INFER CONGRESSIONAL INTENT TO PRECLUDE JUDICIAL REVIEW OF CONSTITUTIONAL CLAIMS…...…1**

      **II.**       **UNLIKE THE CASE AT BAR, *ELGIN* INVOLVED EMPLOYEES WHO WERE COVERED BY THE ADMINISTRATIVE SCHEME………………5**

**CONCLUSION**…………………………………………………………………………….6

# **TABLE OF AUTHORITIES**

**CASES**

*Elgin v. Department of Treasury*, ___U.S.___, 132 S.Ct. 2126 (2012)……………………*passim*

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)…………………………………….2, 3, 5

*Webster v. Doe*, 486 U.S. 592 (1988)…………………………………………………….....*passim*

**STATUTES**

5 U.S.C. § 1101……………………………………………………………………………....1

5 U.S.C. § 3328……………………………………………………………………………….1

50 U.S.C § 403(c)..…………………………………………………………………………...2, 4

## **STATEMENT OF ISSUES**

1. What impact does the recent United States Supreme Court decision in *Elgin v. Department of Treasury*, ___U.S.___, 132 S.Ct. 2126 (2012) have on Defendant's Motion to Dismiss?

## PROCEDURAL HISTORY

On May 2, 2011, Defendant filed a Motion to Dismiss, ECF No. 21. Plaintiff filed his response on June 2, 2011, ECF No. 26, and Defendant filed a reply brief on June 13, 2011, ECF No. 27. On November 22, 2011, the Court issued an Order (Doc. 33) *sua sponte* holding Defendant's Motion to Dismiss in abeyance, pending the issuance of the Supreme Court's decision in *Elgin v. Department of Treasury*, ___U.S.___, 132 S.Ct. 2126 (2012).

The Supreme Court issued its decision in *Elgin* on June 11, 2012. On June 13, 2012, the parties filed a Joint Motion for Leave to File Supplement Briefs regarding the impact of *Elgin*. ECF No. 34. The Court granted the parties' motion on June 14, 2012. ECF No. 35.

## ARGUMENT

**I.     THE SUPREME COURT IN *ELGIN* REAFFIRMED THE "HEIGHTENED SHOWING" REQUIRED TO INFER CONGRESSIONAL INTENT TO PRECLUDE JUDICIAL REVIEW OF CONSTITUTIONAL CLAIMS.**

The Supreme Court in *Elgin* addressed the question whether the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, was the exclusive remedy for federal employees who alleged that the statutes authorizing their terminations were facially unconstitutional. *Elgin*, 132 S.Ct. at 2130. In *Elgin,* the plaintiff employees were terminated for having failed to register for the military selective service. *Id*. at 2131. A federal law, 5 U.S.C. § 3328, barred the employees from employment with any Executive Agency for knowingly or willfully failing to register. *Id.*

The plaintiffs challenged 5 U.S.C. § 3328 as unconstitutional on its face, arguing that it constituted a bill of attainder and imposed unlawful discrimination on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment. *Elgin*, 132 S.Ct. at 2131. The question before the Supreme Court was the exclusivity of the CSRA, which required exhaustion of the administrative remedies before the Merit Systems Protection Board ("MSPB")

with appeal to the Federal Circuit Court of Appeals. *Elgin*, 132 S.Ct. at 2130-31. The plaintiffs argued that, because they challenged a statute as unconstitutional on its face, theirs was not a case that Congress intended to channel into the CSRA's administrative scheme as the exclusive remedy, and therefore suit could be brought in a federal district court in the first instance. *Elgin*, 132 S.Ct. at 2131.

Most importantly for the case at bar, in *Elgin,* the Supreme Court clarified the standard to apply when a court must discern whether Congress intended to preclude federal court review of constitutional claims. *Id.* at 2132-33. The plaintiffs in *Elgin* argued for the application of the standard from *Webster v. Doe*, 486 U.S. 592 (1988), that is, to find that Congress meant to preclude review of constitutional claims in federal district court, there must be a "heightened showing" of clear Congressional intent. *Elgin*, 132 S.Ct. at 2132, citing *Webster*, 486 U.S. at 603. The Supreme Court weighed the application of the *Webster* "heightened" standard versus the lower standard from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the latter of which requires only that Congressional intent to preclude federal district court review be "fairly discernible." *Elgin*, 132 S.Ct. at 2132.

In *Webster*, an employee of the Central Intelligence Agency challenged his termination when the Agency fired him shortly after he disclosed that he was gay. *Id.*, 486 U.S. at 595-96. The defendant employer in *Webster* moved to dismiss, arguing that Section 102(c) of the National Security Act (50 U.S.C. §403(c)) precluded judicial review of the plaintiff's termination, including even plaintiff's constitutional claims. *Webster*, 486 U.S. at 603. The Supreme Court rejected that argument, noting that it had repeatedly re-affirmed that

> where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear . . .We require this heightened showing in part to avoid the "serious constitutional question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.

2

*Id.* Finding that even the strong language of the National Security Act (that favored deference to agency decision-making) failed to evidence the "heightened showing" of clear Congressional intent to foreclose judicial review of constitutional claims, the Court held that a constitutional claim could be reviewed by a federal district court. *Id.* at 600; 603-04.

In *Elgin*, the Supreme Court rejected the plaintiffs' argument for the application of the *Webster* "heightened showing" standard, noting that the *Webster* standard applied only when "a statute . . . purports to 'deny any judicial forum for a colorable constitutional claim.'" *Elgin*, 132 S.Ct. at 2132, quoting *Webster*, 486 U.S. at 603. "*Webster*'s standard does not apply where Congress simply channels judicial review of a constitutional claim to a particular court." *Id.* In *Elgin*, the Supreme Court confirmed what the plaintiff in the case at bar argued in his Response brief: that the *Webster* standard applies to this kind of case because the issue is whether the CSRA forecloses *all* judicial review of constitutional claims. See *Plaintiff's Response to Motion to Dismiss*, p. 9, ECF No. 26. The Supreme Court in *Elgin* emphasized that in *Thunder Basin* it had

> noted that the plaintiff's claims could be "meaningfully addressed in the Court of Appeals" and that the case **therefore did "not present the serious constitutional question that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim."**

*Elgin*, 132 S.Ct. at 2132, quoting *Thunder Basin* at 215 and n. 20 (internal quotations and citation omitted) (emphasis added). The Court went on to note that, "like the statute in *Thunder Basin*, the CSRA does not foreclose all judicial review of . . . constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit." *Elgin*, 132 S.Ct. at 2132.

Accordingly, the ultimate impact of *Elgin* on the case at bar is that the Supreme Court has clarified the application of the different standards necessary to preclude federal court review of

constitutional claims ("heightened showing" of clear intent or "fairly discernible"). When a statutory scheme merely channels constitutional claims into an administrative process before judicial review, a court need only look to see if it is "fairly discernible" of Congress's intent to preclude federal district court review in the first instance. *Elgin*, 132 S.Ct. at 2132. However, in order to preclude *all* judicial review of constitutional claims, the statute must satisfy the "heightened showing" from *Webster*, that is, it must evidence clear intent by Congress to do so. *Id.*

The latter scenario is precisely the one before the Court in the case at bar. Defendant Manjarrez argues that the CSRA precludes all judicial remedies whatsoever for probationary employees. *Defendant's Reply in Support of Motion to Dismiss*, pp. 1-3, ECF No. 27. Accordingly, the *Webster* "heightened showing" standard applies. However, the defendant has not established that the *Webster* standard has been met, nor could he. Like the defendant employer in *Webster*, defendant Manjarrez has not pointed to any statutory provision that can "bear the preclusive weight" he would have it support. *Webster*, 486 U.S. at 603. There is no statutory provision within the CSRA evidencing Congress's "clear intent" to preclude judicial review of constitutional claims of all probationary employees. Given that the strongly deferential language in the National Security Act in *Webster* did not satisfy the "heightened showing" burden, and that the language of the CSRA is much less deferential than that set forth in the NSA, Defendant cannot satisfy this burden.[1]

---

[1] S*ee Webster*, 486 U.S. at 600 ("The language of § 102(c) thus strongly suggests that its implementation was 'committed to agency discretion by law.'"). Contrast this with the Supreme Court's discussion of whether the CSRA meets the "fairly discernible" standard in *Elgin*, 132 S.Ct. at 2133-35. It is apparent from the Court's analysis of the CSRA in *Elgin* that the statute does not contain the highly deferential language of the NSA discussed in *Webster*.

Because *Elgin* confirms that *Webster's* "heightened showing" must be met in order for the Court to infer that Congress meant to preclude all judicial review of Mr. Gonzalez's constitutional claims, Defendant's motion to dismiss should be denied.

## II. UNLIKE THE CASE AT BAR, *ELGIN* INVOLVED EMPLOYEES WHO WERE COVERED BY THE ADMINISTRATIVE SCHEME.

In *Elgin,* the plaintiffs were "covered employees" under the CSRA. *Elgin*, 132 S.Ct. at 2130, n. 1 and 2138-39. Thus, the ultimate issue before the Supreme Court was whether, under the *Thunder Basin* "fairly discernible" standard, it could be inferred that Congress intended the CSRA remedies (MSPB with Federal Circuit review) to be exclusive. *Elgin*, 132 S.Ct. at 2133-35. Here, both parties agree that, as a probationary employee, Mr. Gonzalez has no CSRA administrative remedy. The only argument here is whether Mr. Gonzalez has *any* remedy for his constitutional claims. The plaintiff submits that the Supreme Court in *Elgin* implicitly cautioned against a finding that a statute precludes *all* judicial review of constitutional claims, when it re-emphasized the "'serious constitutional question' that would arise if 'an agency statute were construed to preclude all judicial review of a constitutional claim.'" *Elgin*, 132 S.Ct. at 2132, quoting *Thunder Basin* at 215 and n. 20 (internal quotations and citation omitted). This Court should likewise avoid the serious constitutional question that arises when a statute is construed to preclude all judicial review of a constitutional claim (indeed, in this case, the defendant argues that the CSRA precludes *any* review, administrative or judicial).

Also important from *Elgin* is the manner in which the Court addressed the CSRA's administrative scheme. The MSPB does not have jurisdiction to decide facial constitutional challenges to a statute; that issue must be review by the Federal Circuit. *Elgin*, 132 S.Ct. at 2136. And yet, the Federal Circuit may need a factual record to decide the facial constitutional challenge. *Id.* The Supreme Court ruled that, in such a situation, the Federal Circuit could

5

remand to the MSPB for any fact-finding necessary to its decision on the facial constitutionality of the law. *Elgin*, 132 S.Ct. at 2137-38. The inherent importance for "meaningful" judicial review in all cases involving constitutional claims can be inferred from the Court's thoughtful approach to the development of a factual record in a case that goes through the CSRA administrative scheme (MSPB to the Federal Circuit) discussed by the Court in *Elgin*.[2] By taking care to ensure a factual development for constitutional claims prior to the Federal Circuit's review, the Supreme Court implicitly recognized the guarantee that "constitutional claims . . . receive meaningful review within the CSRA scheme." *Elgin*, 132 S.Ct. at 2139. Mr. Gonzalez is entitled to this guarantee as well: meaningful judicial review of his constitutional claims. The CSRA simply cannot be read to preclude all review of a probationary employee's constitutional claims by any federal court.

## III.  CONCLUSION

"The presumptive power of the federal courts to hear constitutional challenges is well established." *Elgin*, 132 S.Ct. at 2147 (Alito, J., dissenting). Defendant having failed to demonstrate the "heightened showing" of clear Congressional intent to preclude judicial review of all constitutional claims under the CSRA, the motion to dismiss should be denied.

                                              Respectfully submitted,

                                              /s/ George Bach 7/16/12
                                              _____
                                              George Bach, NM Bar # 15546
                                              Cooperating Attorney for
                                              ACLU of New Mexico
                                              Garcia Ives Nowara LLC
                                              201 Third NW, Suite 480

---

[2] Notably, the Supreme Court in *Elgin* found that the MSPB would be responsible for fact-finding for the Federal Circuit, even though the MSPB did not have authority to decide the facial constitutional claim. *Elgin*, 132 S.Ct. at 2137-39.

                    Albuquerque, NM 87102
                    (505) 899-1030
                    Facsimile (505) 899-1051
                    george@ginlawfirm.com

                    Julie Sakura, NM  Bar # 19253
                    *Admitted Pro Hac Vice*
                    Co-Legal Director for
                    ACLU of New Mexico
                    Lopez & Sakura LLP
                    P.O. Box 2246
                    Santa Fe, NM 87504
                    (505) 992-0811
                    Facsimile (505) 992-0814
                    julie@nmfirm.com

                    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 16, 2012, I filed the foregoing electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ George Bach 7/16/12
_____

George Bach