**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BRYAN GONZALEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-11-CV-29-KC** |
| | § | |
| **VICTOR M. MANJARREZ, JR.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot., ECF No. 21. As set forth below, both of Plaintiff's claims for relief are dismissed. First, this Court lacks subject matter jurisdiction over Plaintiff's claim for monetary damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Second, in its discretion under the Declaratory Judgment Act and guided by the factors identified in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Court also declines to exercise jurisdiction over Plaintiff's request for a declaratory judgment. Defendant's motion to dismiss is therefore **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Termination of Plaintiff's Employment

According to the allegations in his Complaint, Plaintiff was employed by the United States Border Patrol from 2007 until 2009. Pl.'s Compl. ¶ 7, ECF No. 1. Due to his participation in a federal career internship program, Plaintiff was categorized as a "probationary" employee. *See id.*; Def.'s Mot. 3. Ordinarily, after serving for two years with this probationary status, Defendant would have been promoted to full Border Patrol Agent. *See* Pl.'s Compl. ¶ 7.

1

One month before the expiration of the two-year probationary period, however, Plaintiff's employment was terminated by Defendant, the Chief Border Patrol Agent for the region. *Id.* ¶¶ 6-7.

Plaintiff alleges that he was terminated in retaliation for his comments regarding the relationship between the United States' drug laws and violence in Mexico. Pl.'s Compl. ¶¶ 7, 13, 20-21. Arguing that Defendant violated Plaintiff's right to free speech under the First Amendment by terminating his employment, Plaintiff filed this action. *Id.* ¶¶ 27-28. Plaintiff now requests that this Court grant him an award of monetary damages under *Bivens* and a declaratory judgment recognizing that Defendant has violated Plaintiff's right to free speech. *Id.* ¶¶ 29-38; First Am. Compl. ¶¶ 29-38, ECF No. 5.

## B.    The Parties' Original Interpretation of the CSRA

Defendant filed a motion to dismiss on May 2, 2011. Def.'s Mot. Before ruling on the motion, however, this Court stayed these proceedings on November 22, 2011, during the pendency of the United States Supreme Court's decision in *Elgin v. Department of the Treasury*, 567 U.S. ----, 132 S.Ct. 2126 (2012). Order, ECF No. 33. In this Court's view, the Supreme Court's decision was highly likely to impact this Court's ruling on Defendant's motion to dismiss. *Id.* After *Elgin* was decided, both Plaintiff and Defendant submitted supplemental briefs to the Court addressing the implications of the Supreme Court's decision in that case. Pl.'s First Supplemental Br., ECF No. 36; Def.'s First Supplemental Br., ECF No. 37.

In the parties' supplemental briefs, as in all of the parties' submissions since the beginning of this litigation, both parties' arguments assumed the validity of the following proposition: "as a probationary employee, [Plaintiff] has no . . . administrative remedy" under any part of the Civil Service Reform Act of 1978 ("CSRA"). *See, e.g.*, Pl.'s First Supplemental

Br. 5; Def.'s First Supplemental Br. 3 ("We acknowledge that . . . administrative and judicial review under the CSRA . . . were not similarly available to [Plaintiff] because of his probationary status."). As explained below in greater detail, this supposed lack of a CSRA remedy for probationary employees was crucial to Plaintiff's arguments in this case. It was, in fact, the only basis that Plaintiff had ever provided to distinguish his claim for *Bivens* relief from other federal employment grievances where the Supreme Court or the United States Court of Appeals for the Fifth Circuit have denied *Bivens* relief. *See, e.g.*, Pl.'s Resp. 5-7, ECF No. 26 (discussing numerous cases).

In support of this central proposition, however, Plaintiff had cited only to the definition of "employee" provided by 5 U.S.C. § 7511(a), which exempts individuals such as Plaintiff, who are "serving a probationary or trial period under an initial appointment," from certain CSRA remedies. *See id.* at 4 n.1. In support of the same proposition, Defendant had cited only to Plaintiff's First Amended Complaint. *See* Def.'s First Supplemental Br. 3 (citing Pl.'s First Am. Compl. ¶ 22).

C.    The CSRA Remedy Actually Available to Plaintiff

In the course of considering the parties' arguments, the Court observed that the definition of "employee" cited by the parties at 5 U.S.C. § 7511(a) applies only "[f]or the purpose of this subchapter" of Chapter 75 of Title 5. *See* 5 U.S.C. § 7511(a). This provision does not provide a single definition of "employee" that is applicable to the entire CSRA, nor does it exempt probationary employees or any other class of individuals from all of the remedies provided under the CSRA. Accordingly, even though Plaintiff may have been exempted "as a probationary employee" from certain individual remedies provided under Chapter 75 of Title 5, *see* Pl.'s First Supplemental Br. 5, the Court was not persuaded that Plaintiff lacked any remedy whatsoever

under the CSRA's "comprehensive system" of remedies for federal employment grievances. *See* Order Directing Supplemental Briefs 3-4, ECF No. 38; *see also Elgin*, 132 S.Ct. at 2130 (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)).

On October 3, 2012, the Court therefore directed the parties to verify their shared assumption that Plaintiff in fact had no administrative remedy or route to judicial review under the CSRA due to his probationary status. Order Directing Supplemental Briefs 3-4. In particular, the Court directed the parties to address whether Plaintiff had a right to "seek corrective action" from the Office of Special Counsel ("OSC") of the Merit Systems Protection Board ("MSPB"), who may in turn broker a solution between the employee and the federal agency involved or "petition the [MSPB] for corrective action" under 5 U.S.C. § 1214. *Id.* at 1-3. The Court also directed the parties to address the effect of this remedy's availability on the Court's authority to award damages under *Bivens* or other forms of relief. *Id.* at 4.

In response to the Court's prompting, the parties confirmed that Plaintiff indeed "had, and appears to have, a right to seek corrective action from the Office of Special Counsel of the Merit Systems Protection Board to redress the defendant's alleged violation of the plaintiff's rights under the First Amendment." Pl.'s Second Supplemental Br. 1, ECF No. 41; *see also* Def.'s Second Supplemental Br. 1, ECF No. 39. Plaintiff also confirmed that he had never attempted to file a complaint with the OSC at any time prior to initiating litigation in this Court. *See* Pl.'s Second Supplemental Br. 1. As Plaintiff acknowledges, the right to file a complaint with the OSC remains available to Plaintiff, because neither the CSRA nor the regulations that govern the OSC complaint process impose any time limit on a federal employee's exercise of that right. *See* 5 U.S.C. § 1214; 5 C.F.R. § 1800.1; *see also Ferry v. Hayden*, 954 F.2d 658, 662

(11th Cir. 1992) (observing that no period of limitations restricts an aggrieved federal employee's right to file a complaint with the OSC); Pl.'s Second Supplemental Br. 1.

### D. Plaintiff's Motion to Stay the Case a Second Time

On November 1, 2012, announcing for the first time his intention to exercise his rights under the CSRA, Plaintiff then filed a motion to stay proceedings in this case a second time "in order to permit [Plaintiff] to pursue a complaint through the [OSC]." Pl.'s Unopposed Mot. to Stay 1, ECF No. 40. Plaintiff requests that his case not be dismissed outright for lack of subject matter jurisdiction, however, as was required by the Supreme Court's decision in the *Elgin* case. *See* Pl.'s Second Supplemental Br. 4.

In *Elgin*, the Supreme Court found "that it is fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' claims," and accordingly required the dismissal of those claims. *Elgin*, 132 S.Ct. at 2140. But Plaintiff argues, in support of his request for a stay rather than dismissal, that his case is distinguishable from *Elgin*. Pl.'s Second Supplemental Br. 4. In Plaintiff's view, *Elgin* addressed the jurisdictional effects of a "CSRA review scheme" that was fundamentally different from the OSC complaint process available to Plaintiff. *See id.*

That is, whereas *Elgin* addressed an administrative procedure by which an aggrieved federal employee could eventually obtain judicial review from the United States Court of Appeals for the Federal Circuit by taking various steps entirely of the employee's own volition, the OSC complaint process subjects Plaintiff's grievance to what Plaintiff calls "the discretionary whims of an administrative agency . . . ." *Id.* As explained in greater detail below, while the *Elgin* petitioners could bring a complaint before the MSPB directly and then choose freely whether to seek judicial review of the MSPB's ruling in the Federal Circuit, "the OSC's decision

to petition the [MSPB] on behalf [of] an employee alleging a constitutional claim is entirely discretionary. If OSC chooses not to petition MSPB, the employee is left with no appeal or judicial review of that decision." *Id*. In Plaintiff's view, therefore, the CSRA provisions creating the OSC complaint process do not evidence Congress's "'clear intent' to preclude a U.S. district court's review of a constitutional claim." *Id.*

Accordingly, Plaintiff argues that "staying (but not dismissing) the instant action while the plaintiff pursues the OSC procedure is an appropriate course of action," but stresses that "[t]his Court should not dismiss the present action . . . because of the high likelihood that the grievance procedure within the Office of Special Counsel will not result in meaningful judicial review." *Id.* at 2.

## II. DISCUSSION

As explained below, this Court finds that both of Plaintiff's claims for relief should be dismissed. First, this Court lacks subject matter jurisdiction to award Plaintiff monetary damages under *Bivens*. Because the OSC complaint process is available to resolve Plaintiff's grievance, this Court's authority to provide a *Bivens* remedy is directly foreclosed under the Fifth Circuit's decision in *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982). Second, in its discretion under the Declaratory Judgment Act and guided by the factors identified in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Court also declines to exercise jurisdiction over Plaintiff's request for a declaratory judgment. Permitting a declaratory judgment action of this kind would undermine the integrity and efficiency of the OSC complaint process that Congress has created.

Both of the Court's decisions in this case are based on the Court's analysis of the administrative remedies created for federal employees under the CSRA. Accordingly, in setting

forth the reasons for its decisions, the Court must begin by describing the CSRA framework and the remedies within that framework that are available to Plaintiff. The Court then turns to address the two types of judicial relief requested by Plaintiff in the current action.

### A.      Remedies Under the CSRA

The Court begins its analysis of this case by reviewing the structure of the CSRA. In particular, the Court seeks to clarify the distinction between the individual right to petition the MSPB to resolve an employment grievance directly and the right to petition the OSC to bring an employment grievance before the MSPB on a federal employee's behalf. The Court then determines which of these rights are available to Plaintiff.

### 1.      The right to petition the MSPB directly

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin*, 132 S.Ct. at 2130 (quoting *Fausto*, 484 U.S. at 455). The CSRA creates a variety of remedial systems for federal employment grievances, at least two of which involve the MSPB. *See Broadway*, 694 F.2d at 981-84 (describing the entities established under the CSRA, including the MSPB, the OSC, and the Office of Personnel Management, and the procedures associated with each). The first is an individual right to petition the MSPB directly for redress of prohibited personnel practices under Chapters 75 and 77 of Title 5. *See* 5 U.S.C. § 7701; *see also Broadway*, 694 F.2d at 981-84 (analyzing 5 U.S.C. §§ 7512, 7513(d), 7703). In *Elgin*, the Supreme Court recalled that if the federal government, acting as an employer, "takes final adverse action against the employee, the CSRA gives the employee the right to a hearing and to be represented by an attorney or other representative before the [MSPB]." *Id.* (analyzing 5 U.S.C. §§ 7513(d), 7701(a)(1), 7701(a)(2)). At the conclusion of these proceedings, "[a]n employee who is dissatisfied with the MSPB's decision is entitled to

judicial review in the United States Court of Appeals for the Federal Circuit . . . ." *Id.* (analyzing 5 U.S.C. §§ 7703(a)(1), 7703(c)). Because the Federal Circuit has "exclusive jurisdiction" over appeals from a final decision of the MSPB, no other federal court of appeals or district court has any role within this remedial system. *See* 28 U.S.C. § 1295(a)(9); *see also* 5 U.S.C. § 7703(b)(1) (judicial review of an MSPB decision "shall be" in the Federal Circuit).[1]

As the Supreme Court noted in *Elgin*, however, this individual right to petition the MSPB directly is available only to employees "who meet certain requirements regarding probationary periods and years of service." *Elgin*, 132 S.Ct. at 2130.

### 2.    The OSC complaint process

A second remedy is also available under the CSRA, however: "The Special Counsel of the MSPB is authorized and required to investigate any allegation of prohibited personnel practices, and may request the MSPB to consider and order corrective action on the matter." *Broadway*, 694 F.2d at 982 (internal citations omitted). Unlike the right to petition the MSPB directly, the right to "seek corrective action" from the OSC is not conditioned on the completion of a probationary period. *See* 5 U.S.C. § 1214(a)(3) (conferring a right to seek corrective action from the OSC on any "employee, former employee, or applicant for employment"). The reported cases of the MSPB confirm that the OSC often brings claims on behalf of probationary employees. *See, e.g.*, *Special Counsel ex rel. Rigdon v. Dep't of Army*, 98 M.S.P.R. 110, 112

---

[1] The CSRA does contemplate a limited role for the district courts, but only where a federal employee "alleges that a basis for the action was discrimination" by his federal employer as "prohibited by enumerated federal employment laws." *Elgin*, 132 S.Ct. at 2134-35 (analyzing 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2)). These limited exceptions for discrimination cases are irrelevant here, however. Since this action is based on an alleged violation of the First Amendment, Plaintiff cannot take advantage of these exceptional provisions. Moreover, these limited exceptions within the CSRA's comprehensive scheme "demonstrate[] that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim. That Congress declined to include an exemption from Federal Circuit review for challenges to a [First Amendment violation] indicates that Congress intended no such exception" to apply in Plaintiff's case. *See id.*

(2004); *Special Counsel ex rel. Hopkins v. Dep't of Transp.*, 90 M.S.P.R. 154, 154 (2001);

*Special Counsel ex rel. Perfetto v. Dep't of Navy*, 85 M.S.P.R. 454, 455 (2000).

If the OSC "determines that there are reasonable grounds to believe that a prohibited

personnel practice has occurred," the OSC may broker a solution with the federal employer or

petition the MSPB "for corrective action" on behalf of the federal employee.  5 U.S.C. §§

1214(b)(2)(B), 1214(b)(2)(C).  The federal employee is not excluded from participation in

proceedings brought by the OSC on his behalf, as the MSPB "shall provide an opportunity for . .

. written comments by any individual who alleges to be the subject of the prohibited personnel

practice."  *Id.* § 1214(b)(3)(B).

After the MSPB renders a final order or decision as to a complaint brought by the OSC

on behalf of a federal employee, "[j]udicial review of any final order or decision of the [MSPB]

under this section may be obtained by any employee, former employee, or applicant for

employment adversely affected by such order or decision" before the Federal Circuit, just as in

cases initiated directly by the federal employee.  *Id.* § 1214(c)(1).  In *Hubbard v. Merit Systems

Protection Board*, for example, the Federal Circuit heard an appeal brought by a rejected job

applicant from the MSPB's decision in *Special Counsel v. EPA*, 79 M.S.P.R. 542, 555 (1998),

which had been initiated by the Special Counsel on the job applicant's behalf, with the job

applicant's participation as an intervenor.  205 F.3d 1315, 1317 (Fed. Cir. 2000).

### 3.     The procedure available to Plaintiff

There is no dispute in this case that, at the time his employment was terminated, Plaintiff

had not completed the two-year probationary period that would ultimately have conferred upon

him an individual right under the CSRA to petition the MSPB directly.  *See e.g.*, Pl.'s First

Supplemental Br. 5; Def.'s First Supplemental Br. 3; *see also Elgin*, 132 S.Ct. at 2130.  Nor is

there any disagreement that Plaintiff can petition the OSC to request relief from the MSPB on his behalf. *See* Pl.'s Second Supplemental Br. 1; Def.'s Second Supplemental Br. 1. The Court is also persuaded that the OSC complaint process does provide a remedy in cases that involve probationary employees. *See, e.g.*, *Special Counsel ex rel. Rigdon*, 98 M.S.P.R. at 112.

The Court also observes that the OSC complaint process may be used to vindicate the right to free speech under the First Amendment. In the past, the OSC has brought claims under the First Amendment on behalf of both current and prospective federal employees. In the case of *Special Counsel v. EPA*, for example, the OSC "filed a complaint against the respondent pursuant to 5 U.S.C. § 1214(b) charging that it had violated the First Amendment rights of [a job applicant] by not selecting him for the position of Criminal Investigator, and that this nonselection is a prohibited personnel practice . . . ." 70 M.S.P.R. 41, 45 (1996). The OSC argued that it could bring any constitutional claims on federal employees' behalf under 5 U.S.C. § 2301(b)(2), which provides that "[a]ll employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their . . . constitutional rights." *Id.* In that case, the MSPB adopted an administrative law judge's report and recommendation that the alleged First Amendment violation had in fact occurred. *Id.* at 50.

Though it made no express reference to the OSC, the Supreme Court also confirmed in *Elgin* "that the MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's First . . . Amendment rights" and "that these claims must be brought within the CSRA scheme." 132 S.Ct. at 2134 (citing *Smith v. Dep't of Transp.*, 106 M.S.P.R. 59, 78-79 (2007) (evaluating an employee's claim that he was suspended in retaliation for the exercise of his First Amendment rights)). The

Federal Circuit also has authority to decide constitutional questions in the course of reviewing MSPB decisions. *Elgin*, 132 S.Ct. at 2134.

The Court is persuaded, therefore, that the OSC complaint process can provide a remedy in Plaintiff's case.

## B.     Plaintiff's Claim to *Bivens* Damages

The Court now turns to assess its subject matter jurisdiction over Plaintiff's claim for *Bivens* damages. The Court recognizes that Defendant filed the present motion to dismiss under Rule 12(b)(6). Def.'s Mot. 1. As explained below, however, the Court's decision in this case is based principally on the rule that *Bivens* claims under the First Amendment arising from grievances covered by the CSRA are precluded. *Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997) (per curiam); *Rollins v. Marsh*, 937 F.2d 134, 137-40 (5th Cir. 1991). In *Dooley v. Principi*, the Fifth Circuit upheld a district court's conclusion "that it lacked subject matter jurisdiction" over a federal employee's *Bivens* claim under the First Amendment. 250 F. App'x 114, 115-16 (5th Cir. 2007) (per curiam). The Fifth Circuit reviewed the "district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1)" and affirmed. *Id.* Accordingly, this Court must also assess the validity of its subject matter jurisdiction over a federal employee's *Bivens* claim under Rule 12(b)(1).

### 1.     Standard

In most circumstances, a challenge to a federal court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure must be addressed before any other challenge to merits or jurisdiction. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

11

U.S. 375, 377 (1994) (citations omitted).  The burden of establishing a federal court's jurisdiction rests upon the party that invokes jurisdiction.  *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (per curiam).  Accordingly, such a party must prove that jurisdiction does in fact exist.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).

## 2. Preclusion of damages under *Bivens*

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held that an individual could sue federal officials and recover money damages for a violation of the Fourth Amendment.  403 U.S. 388, 397 (1971).  In a line of cases following this decision, the Supreme Court established that a federal cause of action exists under the Constitution itself for certain constitutional violations, including deprivation of due process under the Fifth Amendment.  *See, e.g.*, *Davis v. Passman*, 442 U.S. 228, 249 (1979).

In *Bush v. Lucas*, however, the Supreme Court unanimously declined to create a *Bivens* remedy permitting "a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights."  462 U.S. 367, 390 (1983).  In that case, the Supreme Court reasoned that "Congress is in a better position to decide whether or not the public interest would be served by creating" a damages remedy for aggrieved federal employees' First Amendment rights.  *Id.*  In the Supreme Court's judgment:

> Given the history of the development of civil service remedies and
> the comprehensive nature of the remedies currently available
> [under the CSRA], it is clear that the question we confront today is
> quite different from the typical remedial issue confronted by a
> common-law court.  The question is not what remedy the court

should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

*Id.* at 388.

Finding that claims involving the federal workplace "arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," the Supreme Court concluded in *Bush* that the federal courts were barred from supplementing the CSRA "with a new judicial remedy" of damages under *Bivens*. *Id.* at 368.

This Court also finds that Plaintiff's claim for monetary damages under *Bivens* must fail. As in *Bush*, Plaintiff alleges a violation of the First Amendment arising from a federal employment grievance. But "*Bivens* claims under the First Amendment by employees regarding employment actions covered by the CSRA are precluded." *See Grisham*, 103 F.3d at 26; *Rollins*, 937 F.2d at 137-40. The only relevant distinction between Plaintiff's case and the *Bush* case is the nature of the remedy available to Plaintiff under the CSRA. That is, while the federal employee in *Bush* had the right to petition the MSPB's predecessor directly, *see* 462 U.S. at 387-88 & nn.33, 35, here Plaintiff must seek corrective action from the MSPB through the OSC.

In *Broadway*, however, the Fifth Circuit addressed a case practically identical to Plaintiff's. *See Broadway*, 694 F.2d at 982 nn.3-4, 984-85. In that case, the federal employee seeking *Bivens* damages for a constitutional violation also could only seek relief from the MSPB

13

though the OSC complaint process. *See id.* (finding that, while the MSPB does not directly review employment grievances of the type alleged by the *Broadway* plaintiff, the MSPB would nonetheless be authorized to resolve the plaintiff's grievance if brought by the OSC on the employee's behalf). The Fifth Circuit did not find, however, that a federal employee's lack of direct access to the MSPB was a basis for the judicial creation of a *Bivens* remedy. *Id.* at 985. On the contrary, the Fifth Circuit found that a *Bivens* remedy would simply "encourage aggrieved employees to bypass the statutory and administrative remedies [established under the CSRA] in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established." *Id.* at 985 (quoting *Bush v. Lucas*, 647 F.2d 573 (5th Cir. 1981)).

For present purposes, therefore, the Fifth Circuit has conclusively settled that any distinction between these two CSRA remedies is irrelevant. Whatever deficiencies Plaintiff may perceive in the OSC complaint process, a new damages remedy under *Bivens* cannot be justified "simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result . . . ." *Bush*, 462 U.S. at 388. Congress is in a better position than the courts "to decide whether or not the public interest would be served" by creating a judicial damages remedy to enforce federal employees' First Amendment rights. *Id.* at 390. But Congress has not created such a damages remedy. *Id.* Accordingly, the Fifth Circuit confirmed in *Broadway* that the proper course was for an aggrieved federal employee to "take the matter to the Special Counsel's office" under the CSRA. 694 F.2d at 984.

This Court therefore finds that Plaintiff's *Bivens* claim is foreclosed under *Bush* and *Broadway* and must be dismissed. It is not for this Court to disrupt Congress's comprehensive scheme by replacing the OSC complaint process with a judicial remedy for damages.

### C. Plaintiff's Action for a Declaratory Judgment

Having denied Plaintiff's claim for damages under *Bivens*, therefore, this Court need only address Plaintiff's remaining requests for relief. Unlike the *Elgin* petitioners, Plaintiff has never sought injunctive relief compelling Defendant to reinstate Plaintiff to his former position with the United States Border Patrol. *Compare Elgin*, 132 S.Ct. at 2131, *with* Pl.'s Compl. 6-7 *and* Pl.'s First Am. Compl. 6-7. Plaintiff's remaining request for relief seeks only a declaratory judgment under 28 U.S.C. § 2201 that "Defendant's actions violated Plaintiff's rights secured by [the] First Amendment . . . ." *See* Pl.'s Compl. 5-7.

#### 1. Authority and discretion

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Before determining whether to exercise its discretion under the Declaratory Judgment Act, however, a district court must always first assess whether the declaratory judgment action is justiciable and whether the district court is precluded by the Anti-Injunction Act, 28 U.S.C. § 2283, from ruling on the merits. *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387-88 & n.1 (5th Cir. 2003) (analyzing these two initial inquiries under *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

Here, the declaratory judgment action is justiciable because there is "an actual controversy among the parties" regarding Plaintiff's rights under the First Amendment. *See*

*Sherwin-Williams*, 343 F.3d at 387-88. Because Plaintiff's employment has already been terminated, this is not a case where declaratory relief is sought to resolve an "abstract or hypothetical" grievance or a "purely legal" question. *See Orix Credit*, 212 F.3d at 895 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987)). This is not an instance where any "further factual development is required." *See Orix Credit*, 212 F.3d at 895 (quoting *New Orleans Pub. Serv.*, 833 F.2d at 586-87).

The Anti-Injunction Act also does "not apply because there [is] no pending state court action" between the parties in this case. *See Sherwin-Williams*, at 387-88 & n.1; *AXA Re Property & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 319-20 (5th Cir. 2006) ("Because there is neither a state court action against [either party], nor a state court action that involves the same issues presented in this action, the district court properly concluded that the [Anti-Injunction Act] does not bar relief."); *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 & n.5 (5th Cir. 1993); *Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971, 978 (W.D. Tex. 2004). There is no danger that declaratory relief is being used by Plaintiff as "an end run around the requirements of the Anti-Injunction Act." *Travelers*, 996 F.2d at 776.[2]

With these two preliminary questions answered, this Court must therefore decide whether to entertain Plaintiff's action in its discretion under the Declaratory Judgment Act. Under this remedial statute, "any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

---

[2] In *Travelers*, the Fifth Circuit recognized that litigants may use declaratory relief to commit "an end run around the requirements of the Anti-Injunction Act." 996 F.2d at 776 (citing *Texas Emp'rs' Ins. Ass'n v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) (en banc); cert. denied, 490 U.S. 1035 (1989)). "Thus, as a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Id.* (citing *Jackson*, 862 F.2d at 506); *see also AXA*, 162 F. App'x at 319-20; *Mayflower Transit*, 332 F. Supp. 2d at 978 (finding that the Anti-Injunction Act did not preclude declaratory relief in the absence of any "similar, parallel state court action").

be sought." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has therefore characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287; *see also Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *Green v. Mansour*, 474 U.S. 64, 72 (1985). Based on "considerations of practicality and wise judicial administration," this Court is therefore "authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton*, 515 U.S. at 288.

### 2. The standard governing discretion

In the Fifth Circuit, courts apply one of two tests to guide decisions regarding the discretionary stay or dismissal of an action. *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009). The proper test to apply depends upon the type of relief sought. "[I]t is well settled in this circuit that a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard." *Id.* at 396 (analyzing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "[W]hen an action contains any claim for coercive relief, the *Colorado River* abstention doctrine is ordinarily applicable." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2002); *see also Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Under the *Colorado River* standard, the district court's discretion to stay or dismiss is "narrowly circumscribed." *New England Ins. Co.*, 561 F.3d at 395. If the district court cannot point to "exceptional circumstances" that justify staying or dismissing its proceedings, then the district court should exercise jurisdiction and proceed to the merits. *Wilton*, 515 U.S. at 283-84 (discussing *Colorado River*, 424 U.S. at 817-18).

When no coercive relief is sought, however, a district court may "abstain[] from exercising jurisdiction over a declaratory judgment action" based on the standard derived from *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). *See New England Ins. Co.*, 561 F.3d at 395; *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994) (per curiam); *see also Wilton*, 515 U.S. at 289-90. In contrast to the *Colorado River* standard, the *Brillhart* standard affords a district court broad discretion in determining whether to hear an action brought pursuant to the Declaratory Judgment Act, even in the absence of "exceptional circumstances." *See New England Ins. Co.*, 561 F.3d at 395 (citing *Wilton*, 515 U.S. at 281).

In this case, discretion to stay or dismiss Plaintiff's request for a declaratory judgment is governed by the *Brillhart* standard. The Court acknowledges that Plaintiff originally requested a *Bivens* remedy of monetary damages. *See* Pl.'s Compl. ¶¶ 29-33. It is settled law that monetary damages constitute coercive relief, and that the discretionary dismissal of a claim for monetary damages is governed by the narrower *Colorado River* standard, rather than the broader *Brillhart* standard. *See New England Ins. Co.*, 561 F.3d at 396 (citing *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 539 (5th Cir. 2002)); *Transocean Offshore USA, Inc. v. Catrette*, 239 F. App'x 9, 14 (5th Cir. 2007) (per curiam). But to warrant rejection of the *Brillhart* standard in favor of the *Colorado River* standard, a claim for monetary damages must also be "non-frivolous." *See New England Ins. Co.*, 561 F.3d at 396; *Kelly Inv., Inc.*, 315 F.3d at 497 n.4; *Diamond Offshore Co.*, 302 F.3d at 539. "When a party seeks both coercive and declaratory relief, we may still apply *Brillhart* if the request for coercive relief is 'frivolous.'" *Trent v. Nat'l City Bank of Ind.*, 145 F. App'x 896, 898 (5th Cir. 2005) (per curiam); *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973) ("If the prayer for injunctive relief could be

determined to be frivolous . . . , then the suit could be considered solely a declaratory judgment action and the *Brillhart* holding would clearly apply.").

Here, Plaintiff's claim for monetary damages is directly foreclosed in the Fifth Circuit. As explained above, "*Bivens* claims under the First Amendment by employees regarding employment actions covered by the CSRA are precluded." *See Grisham*, 103 F.3d at 26; *Rollins*, 937 F.2d at 137-40. This is so whether a federal employee is authorized to appeal his grievance directly to the MSPB, or must proceed through the OSC complaint process. *See Broadway*, 694 F.2d at 984-85. Even in such circumstances, the Fifth Circuit has emphasized that the proper course for an aggrieved federal employee is to "take the matter to the Special Counsel's office" under the CSRA. *Id.* at 984. In disregard of this controlling precedent, however, Plaintiff never filed any complaint with the OSC prior to initiating this litigation. *See* Pl.'s Second Supplemental Br. 1. Plaintiff's lawsuit was always premised on the erroneous contention that "as a probationary employee, [Plaintiff] has no . . . administrative remedy" under the CSRA. *See* Pl.'s First Supplemental Br. 5; Pl.'s Second Supplemental Br. 1.

With this premise disproven, Plaintiff's claim for *Bivens* damages necessarily fails for lack of jurisdiction. The Court finds, therefore, that Plaintiff's request for coercive relief is frivolous and that this action is now solely one for declaratory relief.[3] *See Trent*, 145 F. App'x at 898; *see also Chevron U.S.A., Inc. v. Cureington*, No. 10–0764, 2011 WL 1085661, at *4 (W.D. La. Feb. 18, 2011) ("The request for coercive relief is considered frivolous, *inter alia*, when the court lacks jurisdiction to grant the relief."). Accordingly, this Court finds that it "enjoys broad

---

[3] Besides *Bivens* damages and declaratory relief, Plaintiff has also requested attorney's fees "pursuant to the Equal Access to Justice Act, 5 U.S.C. § 2412(b)." Pl.'s Compl. 6-7. However, the Fifth Circuit directly addressed this situation in *Trent* and held that "a request *solely* for attorney's fees" does not "constitute[] a request for coercive relief" for the purposes of the *Brillhart* doctrine. 145 F. App'x at 898 n.3. "To rule otherwise would essentially swallow the entire *Brillhart* doctrine since most complaints contain boiler plate requests for costs and attorney's fees." *Id.* Accordingly, Plaintiff's boiler plate requests for costs and attorney's fees do not alter this Court's analysis with respect to the *Brillhart* doctrine.

discretion under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to stay or dismiss a declaratory judgment action" in accordance with the *Brillhart* doctrine.  *See Trent*, 145 F. App'x at 899 (citing *Brillhart*, 316 U.S. at 494; *Wilton*, 515 U.S. at 288).

### 3.    Application of *Brillhart*

In *Brillhart*, the Supreme Court held that "although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction."  *Brillhart*, 316 U.S. at 494; *Wilton*, 515 U.S. at 282.  *Brillhart* also provided guidance as to how a district court should exercise its discretion in actions for declaratory relief, although it did not set out "an exclusive list of factors" governing this discretion.  *Wilton*, 515 U.S. at 282.  Rather, the Supreme Court has indicated that "other cases . . . might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action" in the future.  *Wilton*, 515 U.S. at 283 (analyzing *Brillhart*, 316 U.S. at 494-95).

In subsequent cases, the Fifth Circuit has indeed articulated a series of seven nonexclusive factors that should guide a district court under the *Brillhart* doctrine in deciding whether or not to exercise jurisdiction over a declaratory judgment action.  *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).  When a district court fails to consider these seven *Trejo* factors "on the record," the Fifth Circuit has indicated that a district court abuses its discretion.  *Am. Bankers Life Assurance Co. of Fl. v. Overton*, 128 F. App'x 399, 402 (5th Cir. 2005) (per curiam).  The seven nonexclusive *Trejo* factors are:

i.    whether there is a pending state action in which all of the matters in controversy may be fully litigated;

ii.    whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

iii.     whether the plaintiff engaged in forum shopping in bringing the suit;

iv.     whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

v.     whether the federal court is a convenient forum for the parties and witnesses;

vi.     whether retaining the lawsuit would serve the purposes of judicial economy;

vii.     whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Trejo*, 39 F.3d at 590-91; *see also Sherwin-Williams*, 343 F.3d at 388; *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001).

The Fifth Circuit has also explained that these seven *Trejo* factors broadly serve three core values: federalism, the fairness of forum selection, and efficiency. *Sherwin-Williams*, 343 F.3d at 390-91; *see also Am. Emp'rs' Ins. Co. v. Eagle Inc.*, 122 F. App'x 700, 703 (5th Cir. 2004). District courts apply each of the seven *Trejo* factors to the facts of a case while keeping in mind their reflection of these three core values. *Sherwin-Williams*, 343 F.3d at 390-91; *Am. Emp'rs' Ins. Co.*, 122 F. App'x at 703; *Am. Bankers Life Assurance Co.*, 128 F. App'x at 402. This Court now proceeds to weigh the seven *Trejo* factors in light of the three core values identified in *Sherwin-Williams*.

### i.     Whether there is a pending state action in which all of the matters in controversy may be fully litigated

Though there is no pending state action in this case, the first *Trejo* factor nonetheless weighs in favor of declining jurisdiction over Plaintiff's action for a declaratory judgment. In this case there is indeed a parallel proceeding "in which all of the matters in controversy may be fully litigated . . . ." *See Trejo*, 39 F.3d at 590-91. That is, Plaintiff has explicitly informed the Court of his intention "to pursue a complaint through the Office of Special Counsel." Pl.'s Unopposed Mot. to Stay 1. The Court has also verified that the OSC complaint process does

provide a remedy in cases that involve probationary employees, *see, e.g.*, *Special Counsel ex rel. Rigdon*, 98 M.S.P.R. at 112, and the First Amendment, *see EPA*, 70 M.S.P.R. at 45. The MSPB is also experienced at balancing a federal employee's right to free speech against the federal employer's need to maintain good order and discipline. *See Smith*, 106 M.S.P.R. at 78-79 (cited favorably in *Elgin*, 132 S.Ct. at 2134). After the conclusion of the MSPB's proceedings, the Federal Circuit will also be available to hear Plaintiff's appeal. *See, e.g.*, *Hubbard*, 205 F.3d at 1317.[4] Declining jurisdiction over this declaratory judgment action, therefore, would not leave the parties unable to adjudicate their conflicting rights and interests.

The Court recognizes that the parallel proceeding in this case is a federal administrative one, rather than a state judicial one. As the Fifth Circuit explained in *Sherwin-Williams*, however, "the first *Trejo* factor, whether there is a pending state action in which all the matters in the controversy may be litigated, requires the court to examine comity and efficiency." *Sherwin-Williams*, 343 F.3d at 391-92. Accordingly, even though the first *Trejo* factor does implicate the core value of federalism to an extent, it also requires the Court to consider other interests, such as the deference owed to an administrative procedure that Congress has created to resolve federal employment grievances with increased efficiency and expertise. Moreover, as the Supreme Court explained at length in *Wycoff*:

> Even when there is no incipient federal-state conflict, the declaratory judgment procedure will not be used to preempt and

---

[4] Additionally, the Court reassures Plaintiff that the doors of the district courts will remain open if the OSC fails in its statutory duty to investigate the merits of his complaint against Defendant. The Fifth Circuit has consistently held that the district courts may compel the OSC to investigate the claims of federal employees regarding prohibited personnel practices. *See Schwartz v. Int'l Fed'n of Prof. & Tech. Eng'rs, AFL-CIO*, 306 F. App'x 168 (5th Cir. 2009); *DeLeonardis v. Weiseman*, 986 F.2d 725, 727 (5th Cir. 1993). This does not mean, however, that suits brought in district courts may be used to review "the OSC's decisions to terminate or conduct an investigation . . . on the merits." *Schwartz*, 306 F. App'x at 173-74 (quoting *DeLeonardis*, 986 F.2d at 727). "'[W]hen the OSC decides to terminate an investigation that it began pursuant to a complaint, the decision is not reviewable,' because it has discharged its statutory duty." *Schwartz*, 306 F. App'x at 173-74 (quoting *DeLeonardis*, 986 F.2d at 727) (alterations in the original).

> prejudice issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review.  It would not be tolerable, for example, that declaratory judgments . . . [be used to] forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or many agencies that are authorized to try and decide . . . an issue in the first instance. Responsibility for effective functioning of the administrative process cannot be thus transferred from the bodies in which Congress has placed it to the courts.

344 U.S. at 246 (internal citations omitted).

As this passage from *Wycoff* demonstrates, therefore, a district court may decline to exercise jurisdiction over a declaratory judgment action out of deference to an administrative proceeding created by Congress, even in the absence of any "federal-state conflict." *Id.*  The Fifth Circuit has confirmed as well that "[t]he lack of a pending parallel state proceeding should not automatically require a district court to decide a declaratory judgment action . . . ." *Sherwin-Williams*, 343 F.3d at 394; *see also Wilton*, 515 U.S. at 290 (recognizing the possibility that "cases raising issues of federal law or cases in which there are no parallel state proceedings" also might permit the discretionary dismissal of a declaratory judgment action).

Because two administrative agencies, the OSC and the MSPB, have been authorized by Congress to decide federal employment grievances in the first instance, the declaratory judgment procedure must "not be used to preempt and prejudice" these matters in a district court.  *See Wycoff*, 344 U.S. at 246.  On these same grounds, the Fifth Circuit has also affirmed the dismissal of a declaratory judgment action where the plaintiff had failed to pursue remedies available to her through the United States Army Claims Service.  *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978) (citing *Wycoff*, 344 U.S. at 246).  The United States District Court for the Northern District of Texas has also found that it should deny declaratory relief to a litigant who requested that it decide "issues committed for initial decision" to another federal

administrative body, the Pension Benefit Guaranty Corporation. *Pension Benefit Guar. Corp. v. Cafeteria Operators, L.P.*, 3:03-CV-2173, 2004 WL 1800850, at *4 n.7 (N.D. Tex. August 12, 2004) (citing *Wycoff*, 344 U.S. at 246).

This Court finds, therefore, that the first *Trejo* factor weighs against the discretionary exercise of jurisdiction in a declaratory judgment action that would interfere with the OSC complaint process.

### ii. Whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant

The second *Trejo* factor is not apparently implicated in this case. *See Trejo*, 39 F.3d at 590-91. The Court is not aware of any claim that Defendant might have against Plaintiff arising from Plaintiff's federal employment grievance. Therefore it does not consider Plaintiff's claim to have been filed "in anticipation" of any such lawsuit. *See id.*

### iii. Whether the plaintiff engaged in forum shopping in bringing the suit

The third *Trejo* factor is implicated in this case and weighs against this Court's discretionary exercise of jurisdiction. *See id.* Whether or not this particular Plaintiff actually intended to circumvent the OSC complaint process by filing this action in bad faith, permitting Plaintiff to proceed toward a declaratory judgment in a district court would indeed encourage "forum shopping" by other aggrieved federal employees in the future. *See id.* The Fifth Circuit has found that permitting federal employees to pursue claims for monetary damages in a district court would "encourage aggrieved employees to bypass the statutory and administrative remedies [established under the CSRA] in order to seek direct judicial relief . . . ." *See Broadway*, 694 F.2d at 985. Circumvention of the OSC complaint process by means of a suit for a declaratory judgment would lead to identical results.

24

Accordingly, the third *Trejo* factor weighs against this Court's discretionary exercise of jurisdiction over Plaintiff's action for a declaratory judgment.

### iv.         Whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist

The fourth *Trejo* factor is also implicated in this case and weighs against the exercise of jurisdiction. *See Trejo*, 39 F.3d at 590-91. Permitting Plaintiff access to a district court in this case, rather than the forum that Congress has created for this sort of grievance, would indeed create "inequities" between Plaintiff and Defendant, as well as between Plaintiff and other similarly situated federal employees.

As the Fifth Circuit has observed, permitting Plaintiff to circumvent the OSC complaint process would "deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established." *See Broadway*, 694 F.2d at 985. Depriving Defendant of this opportunity is unfair and would indeed contribute to an inequity. Moreover, allowing a declaratory judgment action before the OSC is able to consider the matter within the framework of the CSRA, thereby permitting Plaintiff to gain "precedence in time and forum," simply encourages further gamesmanship and "procedural fencing" in such cases. *See Sherwin-Williams*, 343 F.3d at 397 & n.7 (recalling that the Fourth Circuit identified impermissible "procedural fencing" where a declaratory judgment action was used to circumvent state administrative remedies under North Carolina law in *Aetna Cas. & Surety Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422-23 (4th Cir. 1998)).

Additionally, this Court's intervention would thwart the system by which Congress attempted to ensure "unitary decisionmaking and consistency" among cases arising from federal employment grievances. *See McAuliffe v. Rice*, 966 F.2d 979, 980-81 (5th Cir. 1992). If

Plaintiff gains access to one forum while other federal employees continue to use a different forum for grievances of essentially the same character, Congress's scheme for "unitary decisionmaking and consistency" will break down and inequities will result. *See id.* "Ultimately, it would provide a disincentive for Congress to continue improving the mechanisms by which an aggrieved employee can protect his rights." *Broadway*, 694 F.2d at 985.

Accordingly, the fourth *Trejo* factor weighs against the discretionary exercise of jurisdiction over Plaintiff's action for a declaratory judgment.

### v. Whether the federal court is a convenient forum for the parties and witnesses

The fifth *Trejo* factor is not apparently implicated in this case. *See Trejo*, 39 F.3d at 590-91. The Court understands that both of the litigants in this case were employed in the vicinity of the El Paso Division of the Western District of Texas at the commencement of this litigation. *See* Pl.'s Compl. ¶¶ 5-6. Therefore, the Court is persuaded that this Court is a sufficiently convenient forum for the parties within the meaning of *Trejo*. *See* 39 F.3d at 590-91. The Court has been given no reason, however, to believe that the OSC complaint process would not be equally convenient. The MSPB apparently operates out of a Dallas Field Office. *See, e.g.*, *Moorer v. Office of Pers. Mgmt.*, 104 M.S.P.R. 610, 610 (2007); *Broadway*, 694 F.2d at 982 n.3. According to the OSC's website, so does the OSC. *See* United States Office of Special Counsel Website, https://www.osc.gov/contacts.htm#  (last visited January 2, 2013). Moreover, it appears that the OSC does maintain an online filing system that can be accessed from any personal computer with an internet connection. *Id.* at https://www.osc.gov/oscefile  (last visited January 2, 2013).

The Court also observes that Plaintiff has never suggested that pursuing a complaint with the OSC would be inconvenient based on any logistical obstacles. Rather, Plaintiff has explicitly indicated his intention to begin the OSC complaint process. Pl.'s Second Supplemental Br. at 4-5. Accordingly, even if some inconvenience might conceivably be created by Plaintiff's obligation to pursue this administrative remedy at the OSC's Dallas Field Office, this Court does not find that such inconvenience implicates the fifth *Trejo* factor or weighs in favor of exercising jurisdiction in this case. *See Trejo*, 39 F.3d at 590-91.

### vi. Whether retaining the lawsuit would serve the purposes of judicial economy

As the Fifth Circuit held in *Sherwin-Williams*, the sixth *Trejo* factor "primarily address[es] efficiency considerations." 343 F.3d at 392. There is no question that judicial economy and efficiency would be better served by permitting the OSC complaint process to run its course without interference from a district court, because the OSC and MSPB possess specialized expertise regarding federal employment grievances.

Indeed, the very purpose for these bodies' creation under the CSRA was to serve "the needs of sound and efficient administration" in disputes such as this one. *See Fausto*, 484 U.S. at 445; *Grisham*, 103 F.3d at 26; *Rollins*, 937 F.2d at 137. In the Fifth Circuit, the needs of efficient administration are also recognized as the basis for the preclusive effects of the CSRA on judicial review in a variety of contexts unrelated to constitutional rights. *See McAuliffe*, 966 F.2d at 980-81 (declining to review a claim brought by a terminated federal employee under the Administrative Procedure Act); *Guitart v. United States*, 3 F.3d 439, 1993 WL 347206, at *2-3

(5th Cir. Aug. 19, 1993) (per curiam) (citing *McAuliffe* and declining to review a claim brought under the Federal Tort Claims Act).[5]

Accordingly, the sixth *Trejo* factor weighs against this Court's discretionary exercise of jurisdiction in a declaratory judgment action that would undermine judicial economy and efficiency.

> **vii.     Whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending**

The seventh and last *Trejo* factor is concerned with the core value of federalism, *see Sherwin-Williams*, 343 F.3d at 392, and is not implicated by this case. There is no need "to construe a state judicial decree" to resolve the issues in this case. *See Trejo*, 39 F.3d at 590-91. Even so, the Court emphasizes again that the absence of any threat to the value of federalism does not automatically require this Court to hear a declaratory judgment action, as indicated by the decisions of the Supreme Court and the Fifth Circuit. *See Wycoff*, 344 U.S. at 246; *Sherwin-Williams*, 343 F.3d at 394; *see also Wilton*, 515 U.S. at 290.

---

[5] Based on these same considerations, other federal courts of appeals traditionally imposed a requirement that aggrieved federal employees first file a complaint with the OSC before commencing an action for injunctive relief in district court under the doctrine of administrative exhaustion. *See, e.g.*, *Houlihan v. Office of Pers. Mgmt.*, 909 F.2d 383, 384 (9th Cir. 1990) (citing *Karamanos v. Egger*, 882 F.2d 447, 451 (9th Cir. 1989)) (holding that "a federal employee must first seek review with the Office of the Special Counsel" before pursuing claims in district court); *see also Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992); *Daly v. Costle*, 661 F.2d 959, 963 (D.C. Cir. 1981) ("That appellant has alleged constitutional deprivations does not change the analysis, for so long as effective remediation conceivably could have been achieved through the [CSRA's] administrative process, exhaustion was prerequisite."). Because Plaintiff seeks no injunctive relief, the Court need not speculate as to whether a federal employee such as Plaintiff, who lacks the *Elgin* petitioner's right to petition the MSPB directly, might have perhaps retained the right to pursue injunctive remedies in district court even after the Supreme Court's decision in *Elgin*. *See Elgin*, 132 S.Ct. at 2133-34 (finding only that Congress intended to deny "such employees" as the *Elgin* petitioner "an additional avenue of review in district court"). The Court observes only that, if such litigation has survived *Elgin*, it is still likely subject to the administrative exhaustion requirement. An essential rationale behind the *Elgin* decision was that the CSRA's "integrated scheme of review would be seriously undermined if . . . a covered employee could challenge a covered employment action first in a district court . . . ." *Id.* at 2135. This rationale only reaffirms the "policy goals, and the lack of countervailing interests . . . requiring a federal employee to file a claim with the OSC before repairing to federal court." *See Irizarry v. U.S.*, 427 F.3d 76, 79 (1st Cir. 2005) (imposing an exhaustion requirement). It is further confirmation that this Court should decline to consider this declaratory judgment action in light of Plaintiff's failure to pursue all available CSRA remedies.

### 4.    Conclusion under the *Trejo* factors

Therefore, guided in its discretion under the Declaratory Judgment Act by the seven nonexclusive *Trejo* factors, the Court concludes that this action for a declaratory judgment should be dismissed. *See Trejo*, 39 F.3d at 590-91. The first, third, fourth, and sixth *Trejo* factors all weigh heavily in favor of declining to exercise jurisdiction, while the second, fifth, and seventh *Trejo* factors do not particularly support this Court's discretionary exercise of jurisdiction. *See id.*

In other words, the Court's adjudication of Plaintiff's request for declaratory relief would undermine the integrity, fairness, and efficiency of the OSC complaint process, which is an adequate forum for Plaintiff's employment grievance and a central component of the comprehensive administrative framework that Congress has "painstakingly established" under the CSRA. *See Broadway*, 694 F.2d at 984-85. In this Court's view, "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding . . . ." *See Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).

Therefore, compelling the OSC to fulfill its mandate while this Court addresses the same constitutional questions in the same case would undoubtedly constitute "gratuitous interference" with the OSC complaint process, against which the Supreme Court has warned. *See Wilton*, 515 U.S. at 283 (analyzing *Brillhart*, 316 U.S. at 495); *see also Wycoff*, 344 U.S. at 246. As with a claim for monetary damages, such interference would simply "encourage aggrieved employees to bypass the statutory and administrative remedies [established under the CSRA] in order to seek direct judicial relief . . . ." *See Broadway*, 694 F.2d at 984-85.

This Court should not, therefore, thwart the will of Congress by indulging in such interference. The Court declines to consider this declaratory judgment action.

### III.    CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff's *Bivens* claim is directly foreclosed under the Fifth Circuit's decision in *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982). In its discretion under the Declaratory Judgment Act and in light of the factors identified in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Court also declines to exercise jurisdiction over Plaintiff's request for a declaratory judgment.

Accordingly, Defendant's Motion to Dismiss, ECF No. 21, is hereby **GRANTED**.

The clerk of court shall close this case.

All other pending motions in this case are hereby **DENIED** as moot.

**SO ORDERED.**

SIGNED this 4th day of January, 2013.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE